**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erin Rippstein, | No. CV-20-02216-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Boeing Company, et al., | |
| Defendant(s). | |

Before the Court is Defendant The Boeing Company's Motion for Summary Judgment (Doc. 54). For the following reasons, the Motion will be granted in part and denied in part.[1]

## I. BACKGROUND

Plaintiff Erin Rippstein worked as a software engineer for Defendant The Boeing Company for ten years beginning in June 2009. (Doc. 1-4 at 7). On December 14, 2015 and again on April 24, 2018, Plaintiff found anonymous notes on her desk with lewd messages about her body and her clothing. (Doc. 1-4 at 7–8). Around July 19, 2018, Plaintiff learned that a photo of her was missing from a coworker's cubicle. (Doc. 63 ¶ 20). After that, Defendant's Corporate Investigations team opened an investigation. (Doc. 63 ¶ 24).

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

On October 12, 2018, Plaintiff received a message to her work email address from an unfamiliar non-Boeing email address that read, "Consider this your 2 weeks notice from boeing, you have 2 weeks to quit or else you'll regret it I'm not joking around anymore if you know what's good for you you'll leave if you care at all for you and ur family." (Doc. 63 ¶ 28). Defendant's Threat Management Team ("TMT") met that day to assess the threat and determine a plan of action. (Doc. 63 ¶ 30). One aspect of that plan involved rerouting emails with similar key words, domains, and addresses to a "trace" inbox monitored by a member of Defendant's forensics team. (Doc. 63 ¶ 34). In addition, on October 15, 2018, Plaintiff filed a report with the Mesa Police Department ("MPD"), which launched an investigation. (Doc. 63 ¶¶ 37, 40).

On December 22, 2018, another threatening message was sent to Plaintiff's work email address—but was rerouted to the trace inbox—stating, "I watch you with your daughter and alone and at work You need to leave boeing Mesa." (Doc. 1-4 at 9). Defendant informed the MPD of the email on January 4, 2019, and Plaintiff was informed of the email on January 7, 2019. (Doc. 63 ¶¶ 48, 49).

On February 5, 2019, a member of Defendant's forensics team found another email that had been sent to Plaintiff's work email address and rerouted to the trace inbox on November 1, 2018 stating, "I will end it for you Either quit your job at Boeing Mesa or die." (Doc. 63 ¶¶ 58, 59). That day, Defendant alerted MPD of the email, and the TMT elevated the threat level. (Doc. 63 ¶¶ 61, 62).

By the end of February 2019, MPD had exhausted its leads based on digital evidence and sought to interview Plaintiff's coworkers. (Doc. 63 ¶ 67). In-person interviews at Boeing's campus took place in May 2019. (Doc. 63 ¶ 68).

In the meantime, twice in March 2019, Plaintiff's car had a flat tire. (Doc. 1-4 at 9). On the second occasion, the flat tire was caused by a piece of metal resembling a blade. (Doc. 63 ¶ 66).

On July 2, 2019, Plaintiff began a leave of absence to seek medical care for her panic and anxiety. (Doc. 63 ¶ 71). On July 11, 2019, Defendant closed its investigation.

(Doc. 63 ¶ 122). On August 9, 2019, Plaintiff left her job with Defendant. (Doc. 63 ¶ 72). On October 3, 2019, Plaintiff filed an administrative charge of discrimination, sexual harassment, and retaliation against Defendant. (Doc. 63 ¶ 74).

On August 25, 2020, Plaintiff filed a Complaint against Defendant in Maricopa County Superior Court. (Doc. 1-4 at 5). On November 18, 2020, Defendant removed the case to this Court. (Doc. 1). On March 4, 2022, after completion of discovery, Defendant filed the instant Motion for Summary Judgment, which has been fully briefed. (Docs. 54, 62, 64).

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id*. at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III. DISCUSSION

Plaintiff's Complaint alleges six counts against Defendant: (1) hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); (2) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); (3) retaliation in violation of the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(A)(3)(c)(2); (4) discrimination and harassment in violation of the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463; (5) retaliation in violation of the ACRA, A.R.S. § 41-1464; and (6) intentional infliction of emotional distress ("IIED"). (Doc. 1-4 at 5). The ACRA is "generally identical" to Title VII, so the Court will address

the ACRA claims together with their corresponding Title VII claims. *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909 n.3 (Ariz. 1983); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). In addition, an AEPA retaliation claim uses the same framework as a Title VII retaliation claim. *See Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 796 (D. Ariz. 2019). The Court will therefore begin by addressing the hostile work environment sex discrimination claims, followed by the retaliation claims, and finally, the IIED claim.

### a. Sex Discrimination

"A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). To meet the first prong, the plaintiff must show that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* (internal quotation marks and alteration omitted). Under the second prong, the employer is not liable for harassment by a non-supervisory employee if it takes "corrective measures . . . reasonably calculated to end the harassment" considering "the employer's ability to stop the harassment and the promptness of the response." *Id.* at 539–40 (internal quotation marks omitted); *see Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). Here, Defendant argues that some of the conduct Plaintiff cites as discriminatory is not actionable because it is time barred or not sexual in nature, that the actionable conduct was not sufficiently severe or pervasive, and that regardless, Defendant took reasonable corrective measures that stopped the harassment.

First, Defendant argues that the December 2015 note cannot be considered because it is time barred. (Doc. 54 at 11). A Title VII discrimination claim "will not be sustained if it is based on an event . . . that occurred more than 300 days before the filing

4

of a charge." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998); *see* 42 U.S.C. § 2000e-5(e)(1). A similar 180-day limitation period applies to ACRA claims. A.R.S. § 41-1481(A); *see Gordwin v. Amazon.com Inc.*, No. CV-21-00888-PHX-SPL, 2021 WL 5396086, at *3 (D. Ariz. Nov. 17, 2021). Still, because hostile work environment claims "are based on the cumulative effect of individual acts," as long as an act contributing to the claim occurs within the time limit, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" on those claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 117 (2002). For *Morgan*'s continuing violation doctrine to apply, "the acts about which an employee complains [must be] part of the same actionable hostile work environment practice." *Id.* at 120. In making that determination, "a court is to consider whether the conduct was sufficiently severe or pervasive and whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, or were perpetrated by the same managers." *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1164 (D. Ariz. 2016) (quoting *Morgan*, 536 U.S. at 115). "The continuous violations must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Sheikh-Hassan v. United Airlines, Inc.*, No. 98-15114, 1999 WL 137336, at *6 (9th Cir. 1999) (internal quotation marks omitted) (holding that summary judgment was properly granted where there was no evidence that the discriminatory acts alleged came from the same source and where there was a three-year gap between discriminatory incidents because "a gap of three years is not a continuous pattern").

In this case, there was a 28-month gap between the December 2015 note and the next instance of alleged harassment, the April 2018 note. There is no clear continuity between them or any of the other incidents. Because no perpetrator was ever identified, it is impossible to determine if the 2015 note was written by the same person who was responsible for any of the other events. Plaintiff argues that the continuing violation doctrine applies because Defendant's internal documents grouped the notes and the removal of Plaintiff's picture from a coworker's cubicle into a single investigation. (Doc.

62 at 18–19). But the law of the continuing violation doctrine—not Defendant's internal decisions—determines whether the December 2015 note is actionable. And here, it is clear that the December 2015 note was episodic, non-pervasive, and temporally removed from any other conduct giving rise to Plaintiff's case. Following *Sheikh-Hassan*, then, the Court will not consider the December 2015 note as part of Plaintiff's hostile work environment claims because it occurred more than 300 days before Plaintiff filed her administrative charge and it was not part of the same continuous pattern as the events that occurred within the limitations period.

Defendant next argues that the three anonymous emails sent to Plaintiff's work email address are not actionable because they are not *sex-based* discrimination. (Doc. 54 at 12–13). Plaintiff counters that through their references to her family, the emails in fact targeted her based on her being a woman and mother. (Doc. 62 at 15). But regardless of whether the emails were facially discriminatory, "acts contributing to a hostile work environment do not need to be specifically . . . sex-based in nature so long as there is some basis to infer that incidents neutral on their face were in fact discriminatory." *Gordwin*, 2021 WL 5396086, at *6 (internal quotation marks omitted). For example, in *Curtis v. City of Oakland*, the conduct that formed the basis for an employee's hostile work environment claim was largely neutral on its face, and the perpetrator of some of the events was unknown. 571 F. App'x 616, 617 (9th Cir. 2014). Still, the Ninth Circuit reversed the district court's decision granting summary judgment in favor of the employer because "there was evidence in the record from which a reasonable jury could infer" that the employee was being targeted because of his race. *Id.* at 618. Likewise, here, although no perpetrator was ever identified, in light of the references to Plaintiff's daughter and family along with the explicitly sex-based April 2018 note, a reasonable jury could infer that the emails were sent to Plaintiff because of her sex. Accordingly, the Court will consider the emails as part of Plaintiff's hostile work environment claim.

Defendant further argues that Plaintiff's flat tires in March 2019 are not actionable for a variety of reasons, including that there is no evidence that they were deliberate or

that they occurred on the Boeing campus. (Doc. 54 at 13). Plaintiff's Response does not dispute this issue, so it is conceded. *See, e.g.*, *M.S. v. County of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at *24 n.20 (C.D. Cal. Mar. 7, 2017) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument."); *see also Mendoza v. City of Peoria*, No. CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015) (construing Plaintiff's "silence" on an argument as a concession).

Next, Defendant argues that the actionable conduct was not so severe or pervasive as to alter the conditions of employment and create an abusive working environment. (Doc. 54 at 13–14). If Defendant were correct that the only actionable conduct were the April 2018 note, that may be true. But Defendant is not correct. In addition to the anonymous emails that threatened Plaintiff and her family, the evidence in the record—when viewed in the light most favorable to Plaintiff—supports several other instances of harassment that could reasonably be considered sex-based. Those instances include, among others, comments made by a coworker about Plaintiff's body (Doc. 63 ¶ 118), the closure of Defendant's initial investigation because of Plaintiff's purported "selective reporting" (Doc. 63 ¶¶ 84–86), and a message from one member of Defendant's security staff to another in an email chain about Plaintiff asking if the recipient was "going to slap her around a little bit and see if she confesses"[2] (Doc. 63 ¶ 114). A reasonable jury could conclude that the severity of the email containing a death threat together with the pattern of other conduct "so pollute[d] the workplace that it altered the conditions of [Plaintiff's] employment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) ("[T]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." (internal quotation marks omitted)); *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 496–

---

[2] This email was sent on May 16, 2019. (Doc. 63 ¶ 114). Because this act contributes to Plaintiff's claim and occurred within the 180-day ACRA limitations period, Defendant's argument that the ACRA discrimination claim is untimely fails.

7

97 (4th Cir. 2015) (finding that non-pervasive racially tinged death threats were so severe that they could, on their own, engender a hostile work environment).

Finally, Defendant argues that it is not liable for sex discrimination as a matter of law because it implemented reasonable investigative and safety measures that stopped any harassment of Plaintiff. (Doc. 54 at 14–15). The mere fact that harassment stops is not conclusive, as an employer's "remedial obligation" is discharged only if "prompt, effective action" is taken. *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995). Effectiveness is measured "by the twin purposes of ending the current harassment and deterring future harassment—by the same offender or others." *Id.* Although it is a close question, as Defendant undisputedly implemented some remedial measures, the Court finds that there are genuine issues of material fact as to whether Defendant's corrective measures were reasonably effective. In addition to the closure of Defendant's initial investigation due to Plaintiff's purported "selective reporting" and the email between the security staff mentioned above, Plaintiff has presented evidence that there was significant delay in Defendant's discovery of two of the threatening emails, potentially resulting in the loss of evidence that could have resulted in identification of the perpetrator, and that MPD's interviews of Plaintiff's coworkers were delayed by Defendant. Based on this evidence, a reasonable jury could find that Defendant's remedial actions were ineffective at promptly ending the harassment of Plaintiff or deterring future harassment of its employees. Defendant is not entitled to summary judgment on Plaintiff's sex discrimination claims under Title VII and ACRA.

**b. Retaliation**

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Defendant argues that Plaintiff cannot prove the second or third elements and that the retaliation claims therefore fail as a matter of law.

A plaintiff meets the second element by showing "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Adverse employment actions in the retaliation context are "not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64. Still, "trivial harms" such as "petty slights, minor annoyances, and simple lack of good manners" are not adverse employment actions. *Id.* at 68.

Here, Plaintiff cites various aspects of Defendant's investigation into her complaints as adverse employment actions (Doc. 62 at 21 & n.7). While Defendant is correct that some of them are petty slights, minor annoyances, or are not even actions that can be imputed to Defendant (Doc. 64 at 11–12), some of them do raise a genuine factual issue as to whether Defendant subjected Plaintiff to an adverse employment action. Courts have held that evidence that an employer conducted secret surveillance of an employee who has engaged in protected activity raises a material issue of fact for a retaliation claim. *See, e.g.*, *MacDonald v. United Parcel Serv.*, 430 F. App'x 453, 466 (6th Cir. 2011); *Fercello v. County of Ramsey*, 612 F.3d 1069, 1081 (8th Cir. 2010); *Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs.*, 117 F. Supp. 3d 708, 721 (M.D.N.C. 2015) ("Secretive surveillance and heightened scrutiny of an employee can constitute adverse employment actions for retaliation purposes."); *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 598 (S.D.N.Y. 2010) ("[T]here is nothing unreasonable about the jury's concluding that secret surveillance by an employer well *might* . . . dissuade a reasonable employee from continuing to complain about discrimination . . . ."); *Marceau v. Idaho*, No. 1:09-CV-00514-N-EJL, 2011 WL 3439178, at *13 (D. Idaho Aug. 5, 2011). Here, there is evidence that Defendant installed a camera in Plaintiff's cubicle without her knowledge for a period of months—longer than company policy allowed—as well as a covert software program that recorded all of the activity on her computer. (Doc. 63 ¶¶ 93, 94, 96). A jury could reasonably conclude

that those actions, at minimum, would dissuade an employee from making a discrimination claim.

As to the third element of retaliation, the causation element, Defendant argues only that there can be no causal link between Plaintiff's protected activity and an adverse action because Plaintiff has not presented evidence of any adverse action in the first place. (Doc. 54 at 17). The Court having found, however, that there is a genuine issue of material fact as to whether an adverse employment action occurred, Defendant's causation argument also fails.

Finally, the Court must specifically address Plaintiff's AEPA retaliation claim, as Defendant argues that it is time-barred. (Doc. 54 at 17). The statute of limitations for an AEPA claim is one year and starts on the date of an employee's termination. *See* A.R.S. § 12-541(5); *Breeser v. Menta Grp., Inc., NFP*, No. CV 10-1592-PHX-JAT, 2013 WL 3199828, at *6 (D. Ariz. June 24, 2013). Defendant left her job with Defendant on August 9, 2019 and filed her lawsuit on August 25, 2020. Plaintiff argues that Defendant's actionable retaliatory conduct continued post-termination because she was required to go into the office to return her laptop and corporate credit card. (Doc. 62 at 19 n.4). Even assuming that requiring Plaintiff to come into the office could be considered retaliatory, however, Plaintiff has provided no evidence of such conduct, much less the date on which it occurred.[3] Thus, Plaintiff's AEPA retaliation claim is barred by the statute of limitations, and Defendant is entitled to judgment as a matter of law. Still, Plaintiff's Title VII and ACRA retaliation claims will go forward.

### c. Intentional Infliction of Emotional Distress

A successful IIED claim requires proof of three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous;'" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and (3) "severe emotional distress must indeed occur as a result

---

[3] Plaintiff cites to paragraph 123 of Document 63, but that paragraph makes no mention of Plaintiff being required to return to the office.

of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 F.3d 107, 110 (Ariz. 2005) (internal quotation marks omitted). An employer is typically liable for IIED based on sexual harassment of an employee "only when a company utterly fails to investigate or remedy the situation." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585–86 (Ariz. 1987); *Smith v. Am. Express Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1173–74 (Ariz. Ct. App. 1994)). Plaintiff devotes less than a full sentence of her Response to the IIED claim and fails to provide any substantive argument as to how the evidence in the record raises a genuine issue of material fact as to any element. (Doc. 62 at 21). Moreover, Plaintiff does not dispute that Defendant took at least some measures to investigate and remedy the incidents giving rise to her case. (*See, e.g.*, Doc. 63 ¶¶ 17, 26, 27, 30–34, 44, 45, 54–56, 62). Thus, the Court will grant summary judgment in favor of Defendant on Plaintiff's IIED claim.

### IV.  CONCLUSION

Plaintiff's AEPA retaliation claim is time-barred, and Defendant is entitled to judgment as a matter of law on the IIED claim. As for Plaintiff's Title VII and ACRA sex discrimination and retaliation claims, however, there remain genuine disputes of material fact to be resolved by a factfinder at trial. Accordingly,

**IT IS ORDERED** that Defendant The Boeing Company's Motion for Summary Judgment (Doc. 54) is **granted in part** as to Count III and VI and **denied in part** as to Counts I, II, IV, and V.

Dated this 13th day of May, 2022.

Honorable Steven P. Logan
United States District Judge